**PHILLIPS, Plaintiff-Appellee, v. PHILLIPS, Defendant-Appellant.**

Ohio Appeals, Second District, Franklin County.

No. 5205.   Decided February 2, 1956.

Horace S. Kerr, John F. Seidel, Columbus, for plaintiff-appellee.
W. B. McLeskey, C. W. McLeskey, Columbus, for defendant-appellant.

(NICHOLS and GRIFFITH, JJ., of the Seventh District, FESS, J, of the Sixth District, sitting by designation in the Second District.)

## OPINION

By GRIFFITH, J.

From the filing date of the plaintiff's petition on August 20, 1953, to the time of the commencement of the trial on May 11, 1954, over a score of entries were made by the Common Pleas Court, various contempt citations issued, hearings had and punishment imposed on each of the parties to this action.

When the trial date arrived, it is apparent that an extremely hostile and bitter feeling between the parties was in full sway. Counsel did little, if anything, to assuage this feeling.

Plaintiff's amended petition charges the defendant with extreme cruelty and gross neglect of duty and prayed for a divorce. The defendant filed a cross-petition seeking a divorce, alimony, and custody of the children on like grounds.

The case was heard upon the amended petition of the plaintiff and the cross-petition and answer of the defendant. The trial ended on July 13, 1954. On October 4, 1954, the Court entered a decree of divorce to the plaintiff on the grounds alleged and denying the defendant alimony and dismissing her cross-petition.

The Court made brief findings of fact and conclusions of law. There is a mass of testimony covering two thousand pages in support of the charges and recriminations of the parties.

They were married in 1934, and two children are the issue thereof. The plaintiff was a widower having four children in his home, his former wife having died. The defendant had never before been married.

The plaintiff testified that for the first eight years of their married life, the defendant was a wonderful mother and a fine wife. That around 1940, she started to have tantrums and became exceedingly abusive. In the light of this testimony of the plaintiff, any testimony of incidents prior to 1940 should have little weight on the question of the plaintiff's right to a divorce.

In support of the allegations of the petition and cross-petition, there was an array of character witnesses for the plaintiff and for the defendant which, at least, should be a source of pride to the two children.

The briefs filed for the assistance of this Court are the result of hard and painstaking efforts. The plaintiff's brief has injected matters outside the record which would better have been omitted. This Court is not interested in the slightest in the personal feelings of counsel toward each other, and such comments as appear in the brief are not helpful in the solution of the serious issues in this case, nor do they contribute toward the efficient administration of justice. The all important question is whether or not each of the parties involved in this case had a fair and impartial trial, and this will be determined from the record before us and that alone.

The plaintiff called twenty-two witnesses, and it is not going to be helpful to review in detail the testimony of the various witnesses, but

the evidence tends to support the claim of the plaintiff that the defendant possessed an attitude of opposition to her husband and his efforts leading to arguments, bickering, nagging, criticism, and recriminations. That the defendant quarreled with Murdock and with other neighbors and workers and tradesmen who were working on the construction of the residence at 6800 Dublin Road and on the repairs of the Michigan house. That she was unreasonable in her criticisms, jangling, quarreling and charging him, in the presence of her children, with having syphilis and, out of their presence, of being a sexual pervert.

Apparently the plaintiff put much thought and time and effort on trying to solve the question of the mental condition of his wife and had her placed in a sanitarium for her benefit, but he says now that she was not mentally ill but instead was greedy, selfish, mean, distorted in love and revengeful.

On the other hand the defendant's witnesses of like or greater number, tend to support the defendant's charges in her cross-petition and, in substance, related her difficulties in spending weekends at Coshocton Lake and Buckeye Lake, in his excessive use of liquor, his extravagant spending of money on construction of lake, his excessive expenditure of money for presents to his help and associates at the Gas Company, resulting in depriving the defendant of sufficient clothing, household furniture and necessities.

The defendant's evidence tends to support the fact that the plaintiff circulated throughout the neighborhood that his wife was crazy, mentally ill and, in fact, insane and, as one witness put it, "Crazy as a loon." That he had put her in a sanitarium without just cause. That there was altogether too much liquor used by the plaintiff, and it sums itself up into the fact that he was abusive to her, was excessive in his use of liquor and extravagant in the use of his money for the development of lakes. What credence the Trial Court gave to this testimony is indicated by the final order.

Each of the children to this union were emphatic in their testimony favorable to the mother. The plaintiff's placing of the defendant in a sanitarium without any notice to her next of kin, which he admitted, was a very serious offense in the minds of the defendant and the two children. This was the hour of infamy so far as the children are concerned in their attitude toward their father, and it was from that date Tommy quit calling his father "Daddy."

If the plaintiff in good faith complained to Judge McClelland about his wife's condition upon the belief that she did have a mental condition and needed psychiatric attention, then the plaintiff is to be commended and not condemned for his course of conduct. The Trial Court apparently believed that he in good faith made such complaint.

There are so many charges and countercharges in the record that it is crystal clear that there has been a complete withdrawal of all mutual respect and consideration of each for the other. This is a lamentable situation. Both parties unfolded and exaggerated conditions which are abhorrent to all. A thirst for revenge appears on both sides. The case was overtried.

The Trial Court at times was blunt and firm in its rulings as to both the plaintiff and the defendant. He continually tried to eliminate endless details and warned counsel of the waste of time and expense and urged them to wind up the testimony stating that the case should have been terminated long ago.

True, the Trial Court made many inquiries of witnesses, especially those called by the defendant, and examined and cross-examined her at length, but he was at all times courteous and respectful, and this the Trial Court, of course, had a right to do in a divorce action. We do not think he abused his discretion in this respect.

Counsel for the defendant complains that the Court was prejudiced against his client and her counsel. The record reveals certain clashes between counsel and the Court commencing at the very outset of the trial when the Court stated to counsel for the defendant, "This witness, you will remember, was produced as a character witness for the plaintiff. (P. 6.) I might as well short-cut you. Does extravagance amount to cruelty? I am not interested in what caused the neglect. The Court will not admit a mass of testimony to show he spent a lot of money."

Again, the Court severely criticized counsel for defendant for asking Mrs. Murdock, "Well, you are known as the gossip in the community and have been known for twenty years, haven't you?"

Apparently the theory under which counsel for the defendant was proceeding was at variance with the Court's view, and counsel for the defendant stated that he was satisfied with his theory. (P. 335.)

It developed to the point that counsel informed the Court that he was proceeding for the purpose of the record and that what doesn't appeal to a Trial Court might appeal to a reviewing court.

The Court at different times warned counsel that he was wasting his time, and the Court did especially admonish Mrs. Phillips and the son, Tommy, to tell the truth. The record does not reveal the necessity of such warnings. When the Court was examining Mrs. Phillips (P. 1442), he stated, "You have a bad habit of evasion. Just answer me."

Apparently the Court had been irked or disturbed by remarks of counsel for the defendant which could irritate many a Trial Court, and Mrs. Phillips was evasive in her answers.

On the whole, we believe the Trial Court afforded each party a fair and impartial trial and took a long range view in attempting to solve the difficulties and tangled lives of these two litigants.

The Trial Court spent twenty-one long, hot days listening to all the witnesses and had the opportunity, that this Court has not had, of observing the parties and their witnesses, and it is not the province of a reviewing court to encroach upon the prerogative of the trier of the facts. It is our conclusion the judgment granting a divorce is neither contrary to law nor manifestly against the weight of the evidence.

Sec. 3105.14 R. C., provides:

"On notice to the opposite party of the time and place of the application, the court of common pleas, or a judge thereof in vacation, may grant alimony to either of the parties for his sustenance and expenses during the suit and allowances for the support of minor children of the

marriage or by adoption during the pendency of the action for divorce, or alimony alone. When an appeal is taken by either party, the court of appeals, or a judge thereof in vacation, may grant like alimony and support during the pendency of the appeal, upon like notice."

The defendant has made application to this Court for expenses in the prosecution of this appeal. The cost of the voluminous transcript of the testimony as well as of the expense of attorneys fees are both necessary expenses. We find and hold that the defendant who already has paid for the transcript and has incurred heavy attorneys fees in defending her rights on appeal in this case is entitled to an allowance of $3000.00 as expenses incident to the prosecution of this appeal.

We hold that the evidence is sufficient to sustain the finding of the Trial Court, and we agree with its decision in the case.

NICHOLS and FESS, JJ, concur.

NICHOLS, J.

I approve the foregoing opinion and decision because I conclude from the record that the parties can never be reconciled and should be divorced. Ordinarily, where each party is guilty of gross misconduct, as the evidence certainly discloses, neither party is entitled to a divorce and the Court will leave them where they placed themselves.